**LITTLE LEAGUE BASEBALL, INCORPORATED, Plaintiff,**

v.

**WELSH PUBLISHING GROUP, INC., Defendant.**

No. 4:CV–94–1973.

United States District Court, M.D. Pennsylvania.

Feb. 1, 1995.

Charles J. McKelvey, Williamsport, PA, for plaintiff.

Ronald C. Travis, Rieders, Travis, Mussina, Humphrey & Harris, Williamsport, PA, for defendant.

### MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On November 21, 1994, plaintiff Little League Baseball, Inc., a corporation chartered by federal statute, 36 U.S.C. §§ 1071–1088, initiated this action with the filing of a complaint in the Court of Common Pleas of Lycoming County, Pennsylvania. The complaint alleges breach of contract by defendant Welsh Publishing Group, Inc.

On December 5, 1994, defendant removed the action to this court. The notice of re-

moval avers that plaintiff is a citizen of the Commonwealth of Pennsylvania, that defendant is a citizen of the State of New York, and that the amount in controversy exceeds $50,000.00. Notice of Removal at 2 ¶¶ 3, 5, 6. On that basis the court would have original jurisdiction pursuant to 28 U.S.C. § 1332, and removal would be proper under 28 U.S.C. §§ 1441, 1446.

Before the court is plaintiff's motion to remand to the Court of Common Pleas. Plaintiff argues that it is a citizen of the entire United States, and that there is no diversity of citizenship. Plaintiff also argues that remand is required by a "choice of forum" clause set forth in the parties' contract.

### *DISCUSSION:*

### *I. REMOVAL*

When an action over which a district court has original jurisdiction is brought in a state court, the defendant may remove the action to the district court embracing the place in which the state action is pending. 28 U.S.C. § 1441(a). Removal is effectuated by filing a notice of removal accompanied by all process, pleadings, and orders served upon the defendant. 28 U.S.C. § 1446(a). The notice of removal must contain a short and plain statement of the grounds for removal, *id.*, and the removing defendant must provide notice of the removal to all adverse parties. 28 U.S.C. § 1446(d).

If it appears that the district court lacks subject matter jurisdiction over the matter, the case must be remanded to the state court. 28 U.S.C. § 1447(c). Remand is required in the absence of subject matter jurisdiction at any time before the entry of final judgment. *Id.*

A district court has original jurisdiction over civil actions between citizens of different states in which the amount in controversy exceeds $50,000.00. 28 U.S.C. § 1332(a). There must be complete diversity, i.e. all plaintiffs must be of different citizenship than all defendants, before a district court may exercise jurisdiction founded upon diversity of citizenship. *Stanley v. Exxon Corp.,*

824 F.Supp. 52, 53 (E.D.Pa.1993) (citing *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)).

### *II. LITTLE LEAGUE, INC.*

Plaintiff was incorporated by an act of Congress in 1964. An Act to Incorporate the Little League Baseball, Incorporated, Pub.L. No. 88–378, §§ 1–18, 78 Stat. 325 (1964), codified at 36 U.S.C. §§ 1071–1088, as amended by An Act to amend the Act to Incorporate Little League Baseball to provide that the league shall be open to girls as well as to boys, Pub.L. No. 93–551, 88 Stat. 1744 (1974). The Act declares that the objects and purposes of the corporation are:

(1) To promote, develop, supervise, and voluntarily assist in all lawful ways the interest of young people who will participate in Little League baseball.

(2) To help and voluntarily assist young people in developing qualities of citizenship and sportsmanship.

(3) Using the disciplines of the native American game of baseball, to teach spirit and competitive will to win, physical fitness through individual sacrifice, the values of teamplay and wholesome well-being through healthful and social association with other youngsters under proper leadership.

36 U.S.C. § 1073.

Powers of the corporation include suing and being sued "in any court of competent jurisdiction; ..." 36 U.S.C. § 1074(1). However, the Act does not set forth any particular state of citizenship for the corporation. Instead, the principal office was established in Williamsport, Pennsylvania, "or in such other place as may later be determined by the board of directors," with the proviso that "the activities of the corporation *shall not be confined to that place and may be conducted throughout the various States,* the Commonwealth of Puerto Rico, and the possessions of the United States, and in other areas throughout the world." 36 U.S.C. § 1075(a) (emphasis added).[1] Service of process upon

---

1. The headquarters for Little League Baseball, Inc., now is located in South Williamsport, Pennsylvania. Plaintiff's Motion to Remand at 2 ¶ 4;

Defendant's Answer to Plaintiff's Motion to Remand at 1 ¶ 4. The parties appear to use

the corporation is made upon a designated agent located in the District of Columbia. 36 U.S.C. § 1075(b).

## III. CITIZENSHIP OF A FEDERALLY CHARTERED CORPORATION

■ Normally, for diversity purposes, a corporation is a citizen both of the state of its incorporation and the state in which its principal place of business is located. 28 U.S.C. § 1332(c). However, when the corporation is federally chartered, citizenship depends upon the language of the statute and the activities authorized by the statute. If the activities of a federally chartered corporation are limited to a single state, either factually or by charter, then the corporation is a citizen of that state. *Burton v. United States Olympic Committee*, 574 F.Supp. 517, 519 (C.D.Cal. 1983) (citing, *inter alia*, *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union*, 272 F.2d 453, 454–456 (3d Cir.1959)).

■ Conversely, if the corporation is organized to do business in several states, and in fact does so, it has national citizenship only. *Burton*, 574 F.Supp. at 519 (citing *Bankers Trust Co. v. Texas & Pacific Rw. Co.*, 241 U.S. 295, 309, 36 S.Ct. 569, 572, 60 L.Ed. 1010 (1916)). A federally chartered corporation with widespread activities, authorized and actual, may not be the subject of diversity jurisdiction absent specific statutory language providing for citizenship in a particular state or incorporating the entity as a "body corporate" of a particular state. *Burton*, 574 F.Supp. at 519 (citing *Bankers Trust*, 241 U.S. at 310, 36 S.Ct. at 573; *Patterson v. American National Red Cross*, 101 F.Supp. 655 (S.D.Fla.1951)). *See also* 28 U.S.C. § 1348 (providing that national banking associations are deemed citizens of the state in which they are located); 36 U.S.C. § 1 (American National Red Cross is a "body corporate and politic in the District of Columbia"). Other federally chartered corporations which have been held to be national citizens include: the United States Olympic Committee, *Burton*, 574 F.Supp. at 522; the Federal Deposit Insurance Corporation, *FDIC v. Nat'l Surety Corp.*, 345 F.Supp. 885, 887 (S.D.Iowa 1972); the Federal Savings

and Loan Insurance Corporation, *Hancock Financial Corp. v. FSLIC*, 492 F.2d 1325, 1329 (9th Cir.1974); the American Legion, *Harris v. American Legion*, 162 F.Supp. 700, 712 (S.D.Ind.), *aff'd*, 261 F.2d 594 (7th Cir. 1958) (adopting opinion of district court); the Disabled American Veterans, *Rice v. Disabled American Veterans*, 295 F.Supp. 131, 134 (D.D.C.1968); the Tennessee Valley Authority, *Monsanto v. TVA*, 448 F.Supp. 648, 651 (N.D.Ala.1978); and the Veterans of Foreign Wars, *Crum v. VFW*, 502 F.Supp. 1377 (D.Del.1980).

## IV. APPLICATION

Defendant points to no specific statutory language which provides for citizenship of Little League Baseball, Inc., in any particular state, nor any statute which provides that corporations such as Little League Baseball, Inc., are deemed citizens of the state in which they are located. In order to be a citizen of a particular state for diversity purposes, then, the activities of the corporation, either as authorized or as actually taking place, must be localized.

■ As noted above, Little League Baseball, Inc., is authorized by statute to conduct its activities throughout the United States and abroad. 36 U.S.C. § 1075(a). The sole remaining question, then, is whether in fact the activities of the corporation are confined within the territory of the Commonwealth of Pennsylvania such that the activities may be said to be localized. Only if this is the case would the corporation be a citizen of Pennsylvania for diversity purposes, so that this court would have original jurisdiction under § 1332.

Defendant contends that the activities of Little League Baseball, Inc., are localized. It provides affidavits to support this contention, reciting that: (1) plaintiff has admitted to being a Pennsylvania corporation in other litigation, *Swanson Holding LTD v. Little League Baseball, Inc.*, No. 92–01170 (C.P. Lycoming County); (2) plaintiff has admitted to being a New York corporation in other litigation, *Little League Baseball, Inc. v. Hannigan*, No. 93–01063 (C.P. Lycoming

Williamsport and South Williamsport inter-
changeably in their briefs and affidavits.

County); (3) plaintiff owns land, buildings and baseball facilities in South Williamsport; (4) the Little League World Series is held in South Williamsport; (5) the parties' negotiations took place in South Williamsport; and (6) the daily operations of plaintiff are carried out in South Williamsport. *See* Affidavit of David Sprout (record document no. 11); Affidavit of Donald E. Welsh (record document no. 12). Defendant also pointed out in its brief that there were no facts of record to indicate that plaintiff's activities are conducted outside of Pennsylvania.

Defendant's contention, however, confuses the concepts of proving the citizenship of a corporation incorporated under state law with evidence of its principal place of business and proving the citizenship of a federally chartered corporation with evidence that its activities are localized. In fact, in *Crum v. Veterans of Foreign Wars*, discussed at length below, the court "adapted" the analysis normally applied to a determination of which of two states is the principal place of business of a state corporation. In making this adaptation, the *Crum* court relied upon factors which normally constitute the operations of a corporation. Defendant would have the court apply the test discussed in *Crum* to the facts before it. We hold, however, that though the factors of the test discussed in *Crum* are relevant to the issue before us, the test itself does not control, and our analysis leading to that holding follows.

The issue of state citizenship for a federally chartered corporation was faced by the court in *Crum v. Veterans of Foreign Wars*, 502 F.Supp. 1377 (D.Del.1980). In that case, the VFW argued that it was a citizen of Missouri because its national headquarters was located in Kansas City. The court distinguished "principal offices" and "principal place of business," which may not necessarily coincide. *Crum*, 502 F.Supp. at 1380. For example, another court found that the principal place of business of the Tennessee Valley Authority was not Muscle Shoals, Alabama, the principal office locale designated by statute. *Id.* (citing *Monsanto Co. v. TVA*, 448 F.Supp. 648, 650 (N.D.Ala.1978)).

To determine the principal place of business, courts of this Circuit apply the "operational test," which looks "to the state where the corporation has its headquarters of 'day-to-day corporate activity and management.'" *Id.* (quoting *Kelly v. United States Steel Corp.*, 284 F.2d 850, 854 (3d Cir.1960)). In undertaking this analysis, a court considers factors such as the location of personnel, equipment and real estate of the corporation, and the location of executive and high-level management's daily decisions. *Id.* (citations omitted). *See also Wheelabrator Frackville Energy Co., Inc. v. Morea Culm Services, Inc.*, 741 F.Supp. 536, 539–540 (E.D.Pa.1990) (for purposes of diversity jurisdiction, New Hampshire was principal place of business of corporation because nearly all high-level management decisions made there).

The *Crum* court, however, never actually applied the operational test because the VFW had relied upon its allegation that its headquarters, i.e. principal office, was located in Missouri, making it a Missouri citizen for diversity purposes. Since "principal office" and "principal place of business" are not synonymous, establishing the site of the principal offices did not prove the site of the principal place of business (the burden borne by the party asserting federal jurisdiction). Moreover, since the record was devoid of any evidence concerning the VFW's operations, the site of the principal place of business could not otherwise be established. *Crum*, 502 F.Supp. at 1377.

Unlike the VFW in *Crum*, defendant in this case has provided evidence, in the form of the above-described affidavits, as to the principal place of business of Little League Baseball, Inc. Merely establishing the site of the principal place of business, however, does not prove that the activities of the corporation are localized for purposes of conferring citizenship upon the corporation. *Cf. Monsanto, supra*, 448 F.Supp. at 650–651 (corporation whose activities were conducted in several states was not a citizen of any one of those states; no finding of principal place of business). In *Feuchtwanger Corp., supra*, the emphasis was on the fact that the federal credit union's activities were centered in one community within the State of New Jersey, 272 F.2d at 454–455, not the fact that its

principal place of business was located in that community.

The main difference between the two analyses is the end result sought. In the operational test, the court looks at the factors set forth in *Kelly* and determines whether there is a concentration of the operations relative to at least one other state. "Operations" includes a number of exercises of power of a corporation, such as conducting business, owning property, hiring employees, etc. "Operations" may include those powers allowed a corporation under general corporate law. "Activities," at least in this context, are exercises of those powers permitted a federal corporation in its charter, constitution and by-laws, and are specific to the individual, federally chartered corporation. In determining whether the activities of a federally chartered corporation are localized, the *Crum* court looked at the *Kelly* factors and applied them to the VFW's activities.

For all practical purposes, "operations" and "activities" will mean the same thing, as the *Crum* court implied when it adapted the operations test to the case of the VFW. The difference is the context: operations applies to state corporations, activities applies to federal corporations. The test for state corporations is a comparison of states to see in which state the operations of the corporation are most concentrated; that state is the principal place of business of the corporation. The test for federal corporations is not a comparison but an examination of whether or not the corporation conducts its activities over a widespread area. If so, then its activities are not localized.

Simply stated, the conclusion to be drawn from *Crum*, as relevant to the instant case, is that "principal place of business" is not the same as "principal offices," and that the VFW had not presented evidence, consistent with the *Kelly* factors, from which the court could determine that its activities were localized.

Obviously, the principal place of business is where a significant portion of a corporation's activities will take place. However, not all activities will take place there, and localization refers to activities not limited to the factors considered in the operational test. In *Monsanto*, the court looked at the activities conducted by the corporation which were "contemplated by the TVA Act ..." 448 F.Supp. at 651. In *Feuchtwanger*, the activities of the corporation were, by statute and by corporate charter, confined to the local area. The Act creating Little League Baseball, Inc., however, permits activities over a much wider area. The sole question, as recited above, is whether Little League Baseball, Inc., in fact engages in activities consistent with the statute and its charter over a non-localized area.

In this regard, we note that, while defendant has provided through its affidavits evidence tending to indicate that plaintiff's activities are localized, the evidence is not dispositive of the issue. Plaintiff's admissions as to its place of incorporation in other cases are not binding on this court; in fact, they are not particularly relevant, since it is clear that plaintiff is a federally chartered corporation. Also, it is undisputed that plaintiff's principal offices are located in South Williamsport, and therefore one would expect much of the daily business of Little League Baseball, Inc., to be conducted there. This does not necessarily lead to the conclusion that South Williamsport is the principal place of business of plaintiff (although that also is undisputed). Nor are the activities of plaintiff necessarily localized in the state in which its principal place of business is located.

In responding to defendant's brief in opposition to the motion for remand, plaintiff did not contradict the facts set forth in the affidavits filed by defendant. Rather, plaintiff filed its own affidavits reflecting a more complete picture of the activities of Little League Baseball, Inc. In determining whether plaintiff's activities are localized, the court must answer the following questions:

(1) In what activities does Little League Baseball, Inc., actually engage, consistent with 36 U.S.C. §§ 1073, 1074?

(2) In what geographical locations are those activities conducted?

We emphasize again that for purposes of citizenship of federally chartered corporations, "activities" are exercises of corporate powers for the purposes set forth in the

statutes creating the corporation, such powers being authorized by the statutes or charter as well as the corporate constitution and by-laws; "activities" is not synonymous with, and actually is broader than, the factors considered in the operational test for locating the principal place of business.

The "objects and purposes" for which Little League Baseball, Inc., exists are set forth in 36 U.S.C. § 1073. In short, the purpose of the corporation is to promote baseball among young people and to use the game to develop particular qualities and values among the participants. In order to achieve these aims, the corporation is granted broad powers, such as hiring employees, 36 U.S.C. § 1074(3), entering into contracts, § 1074(5), collecting money, § 1074(6), owning and conveying personalty and realty, § 1074(7), (8), and borrowing money, § 1074(9). An all-encompassing provision allows the corporation "to do any and all lawful acts and things necessary or desirable in carrying out the objects and purposes of the corporation." Sec. 1074(11).

The affidavits filed by defendant set forth a number of activities conducted by plaintiff within the Commonwealth of Pennsylvania. The affidavits filed by plaintiff demonstrate clearly that its activities are not limited to those set forth in defendant's affidavits, and that plaintiff's activities extend well beyond the territory of the Commonwealth. These include:

(1) Little League Baseball, Inc., has more than 7,000 leagues worldwide, 6,500 leagues in the United States, and 350 leagues in Pennsylvania. Affidavit of Stephen D. Keener, President of Little League Baseball, Inc. (record document no. 14), at 2 ¶ 3 (hereinafter cited as "Keener Affidavit").

(2) Approximately 2.9 million children on more than 190,000 teams participate in the activities of Little League Baseball, Inc., most of those children living outside of Pennsylvania. Children in all 50 states participate in Little League Baseball. Keener Affidavit at 2 ¶¶ 4, 5.

(3) In addition to its international headquarters in Williamsport, Pennsylvania, Little League Baseball, Inc., owns and operates five regional centers, including centers in: Bristol, Connecticut; Indianapolis, Indiana; St. Petersburg, Florida; Waco, Texas; and San Bernadino, California. These centers conduct the administrative business of Little League Baseball, Inc., in those regions. Keener Affidavit at 2 ¶ 6.

(4) Little League Baseball, Inc., has an office in Canada, and plans a training center in Poland. Keener Affidavit at 2 ¶ 7.

(5) Little League Baseball, Inc., files tax returns in Pennsylvania, California, Indiana, and Connecticut. Keener Affidavit at 3 ¶ 8.

(6) Annual tournaments are conducted by Little League Baseball, Inc., in Fort Lauderdale and Kissimmee, Florida; Taylor and Kalamazoo, Michigan; and Portland, Oregon, in addition to Williamsport, Pennsylvania. Keener Affidavit at 3 ¶ 9.

(7) Little League Baseball, Inc., conducts an International Congress every three years. Seventeen of the last 18 congresses have been held outside of Pennsylvania, and the next International Congress will be held in Reno, Nevada. The International Congress brings together the more than 500 district administrators from around the world to review and revise the playing rules and regulations set forth by Little League Baseball, Inc. Keener Affidavit at 3 ¶ 10.

(8) The business of Little League Baseball, Inc., also is conducted at a semi-annual meeting of its Board of Directors, which has been held in at least 12 places other than in Pennsylvania. Keener Affidavit at 3 ¶¶ 10, 11.

(9) Six members of the Board of Directors of Little League Baseball, Inc., are from Pennsylvania, while nine members are from outside of Pennsylvania, including other states, Puerto Rico, and Canada. Keener Affidavit at 3 ¶ 11.

(10) Little League Baseball, Inc., offers insurance coverage to its member leagues and has management personnel at all of its regional facilities. Keener Affidavit at 4 ¶¶ 12, 13.

(11) The day-to-day activities of Little League Baseball, Inc., are directed from

both its Williamsport offices and its regional offices. Keener Affidavit at 4 ¶ 14.

Each of the foregoing activities is consistent with the purposes for which Little League Baseball, Inc., is chartered, and is a valid exercise of its corporate powers. The foregoing recitation makes plain that the activities of Little League Baseball, Inc., are conducted regularly over a wide area, well beyond the territorial limits of the Commonwealth of Pennsylvania.

We therefore find that the activities of Little League Baseball, Inc., are not localized, and we hold that Little League Baseball, Inc., is a national citizen for purposes of diversity jurisdiction. Plaintiff is not subject to the jurisdiction of this court under § 1332, and the case will be remanded to the Court of Common Pleas of Lycoming County pursuant to § 1447(c).

## V. FORUM SELECTION CLAUSE

Plaintiff also contends that removal from the Court of Common Pleas was improper based on a forum selection clause set forth in the parties' agreement, denominated the "Production Agreement." Exhibit A to the Complaint, Appended to Notice of Removal (hereinafter cited as "Production Agreement"). That document states in part:

> *Governing Law*
>
> This Agreement shall be construed in accordance with the laws of the State of Pennsylvania [sic] in the Court of Common Pleas of Lycoming County. All parties hereto consent to jurisdiction and venue in the State of Pennsylvania [sic].

Production Agreement at 5 ¶ 14.

 A party to a contract may waive the right to remove a case to federal court through an express waiver contained in the contract. *See, e.g., Foster v. Chesapeake Insurance Co., Ltd.,* 933 F.2d 1207, 1217 (3d Cir.), *cert. denied,* 502 U.S. 908, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991). A district court may order remand of a case removed in violation of a forum selection clause which constitutes a valid waiver of the right to remove. *Id.,* 933 F.2d at 1214. A forum selection clause is subject to the normal rules of construction of contractual language. *Id.,*

933 F.2d at 1216. *See also Pennsylvania House, Inc. v. Barrett,* 760 F.Supp. 439, 443 (M.D.Pa.1991) (citing *Snavely's Mill, Inc. v. Officine Roncaglia, S.p.A.,* 678 F.Supp. 1126, 1129 (E.D.Pa.1987)).

 The above-quoted language does not contain a valid waiver of the right to remove. The first sentence is merely a statement that the law of Pennsylvania, as construed by the Court of Common Pleas of Lycoming County, applies for purposes of interpreting the contract. Although the construction by the Court of Common Pleas of Lycoming County is an odd point to add, no other sensible meaning may be given to the sentence.

Plaintiff argues in its reply brief that this sentence must be construed in such a manner that it makes sense. A necessary predicate to such a construction, however, is that the sentence must be drafted in such a manner that sense may be made of it; a court construing a contractual provision does not redraft the provision to give it a sensible meaning which does not otherwise exist. The clause "in the Court of Common Pleas of Lycoming County" is placed so that it modifies "the law of the [Commonwealth] of Pennsylvania," not "construed," as plaintiff argues.

The second sentence indicates that the parties consent to jurisdiction and venue within the Commonwealth of Pennsylvania. An action filed consistent with this provision may be removed. *See, e.g., Pennsylvania House, Inc., supra* (action brought pursuant to contract with clause providing for venue in Union County, Pennsylvania, removed to district court embracing Union County); *Mutual Fire, Marine and Inland Insurance Co. v. Barry,* 646 F.Supp. 831 (E.D.Pa.1986) (action brought pursuant to contract with clause providing for venue in Philadelphia County removed to district court embracing Philadelphia County). *See also* § 1441(a). This provision cannot be read as specifically providing a waiver of the right to removal.

Paragraph 14 of the Production Agreement does not constitute a waiver of the right to remove, and is not grounds for remand.

## VI. COSTS

■ Plaintiff requests costs, including attorney's fees, for the improper removal, pursuant to 28 U.S.C. § 1447(c). An award of costs does not require a finding of bad faith on the part of the removing party. *Miranti v. Lee*, 3 F.3d 925, 929 (5th Cir.1993). However, consideration of an award of costs and attorney's fees necessarily entails review of the decision to remove and whether it was reasonable at the time of removal. *Id.*, 3 F.3d at 928. One court awarded costs under § 1447(c) because "minimal research" into a fundamental question would have revealed to the removing party that removal was improper. *H.F. Vegter Excavation Co. v. Village of Oak Brook*, 790 F.Supp. 184, 187 (N.D.Ill. 1992).

■ We think that the same principle applies in this case. Minimal research would have revealed that plaintiff is a federally chartered corporation; in fact, the complaint states as much. *See* Complaint, appended to Notice of Removal, at 1 ¶ 1. It was incumbent upon defendant, as the removing party, to establish that the court had diversity jurisdiction. As discussed at length above, defendant could do so only by proving that plaintiff's activities are localized. Considering the nature and extent of plaintiff's widespread activities, it would be a simple matter to conclude, upon investigation, that the business of Little League Baseball, Inc., is not localized.

The request for the imposition of costs, including attorney's fees, will be granted. Counsel for plaintiff will be directed to submit affidavits in support of the costs, to which defendant may file objections.

## VII. CONCLUSION

■ A corporation is a national citizen to which citizenship in an individual state for diversity purposes does not apply if: (1) the corporation is federally chartered; (2) the corporation is authorized to conduct activities over a wide area, involving more than one state; (3) the corporation actually does conduct activities over a wide area; and (4) the activities are consistent with the statutory authorization and the corporate charter, constitution and by-laws. Little League Baseball, Inc., is a federally chartered corporation authorized to conduct its activities throughout the United States and its possessions, the Commonwealth of Puerto Rico, and overseas, and actually does conduct such activities over a wide area. Little League Baseball, Inc., therefore is a national citizen and not a citizen of any one state for diversity purposes. It is not subject to the jurisdiction of this court based upon diversity of citizenship.

Based upon a reading of its plain language, the forum selection clause set forth in the parties' agreement does not constitute a valid waiver of defendant's right to remove the action.

Plaintiff's request pursuant to § 1447(c) for reimbursement for costs incurred as a result of the improper removal will be granted.

## ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The motion (record document no. 5) of plaintiff Little League Baseball, Inc., to remand this action to the Court of Common Pleas of Lycoming County, Pennsylvania, is granted, and the case is remanded to the Court of Common Pleas for Lycoming County, Pennsylvania.

2. Plaintiff's request for costs incurred as a result of the removal of the action to this court is granted.

3. Counsel for plaintiff shall file, on or before February 17, 1995, affidavits setting forth the amounts requested as just costs and actual expenses, including attorney's fees, incurred as a result of the removal. The affidavits also shall state whether the costs are reasonable.

4. Defendant may file, on or before February 28, 1995, objections to any or all of the averments set forth in the affidavits required under ¶ 3 of this order.

5. Jurisdiction is retained for the sole purpose of considering plaintiff's request for costs, including attorney's fees.